13-2518SAG    13-2519SAG

\_\_\_ FILED    \_\_\_ ENTERED
\_\_\_ LOGGED    \_\_\_ RECEIVED

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR

## FEDERAL SEARCH WARRANT

OCT 24 2013

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY _____ DEPUTY

### I.   AFFIANT AND EXPERTISE

1. Your affiant, Special Agent (S/A) Daniel M. Kerwin, after being duly sworn, states as follows:

2. Your affiant is an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

3. Your affiant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and is currently assigned to a joint task force comprised of ATF agents and detectives from the Baltimore Police Department (BPD). Your affiant has been employed by the ATF since 2008. Your affiant has participated in numerous investigations focusing on Controlled Dangerous Substance (CDS) trafficking, violent crimes and illegal firearms. Your affiant has conducted covert surveillance of suspected CDS traffickers, interviewed numerous individuals involved in violent crimes and the CDS trafficking trade, participated in the execution of numerous state and federal search and arrest warrants involving CDS traffickers and violent offenders and participated in the seizure of numerous firearms and controlled dangerous substances.

4. Through your affiant's training, education and experience, your affiant has become familiar with the methods used by persons who buy and sell Controlled Dangerous Substances (CDS). Your affiant is also familiar with the techniques employed by these persons to evade law enforcement by utilizing counter-surveillance, false and nominee identifications,

1

and multiple means of communication and transportation. Your affiant has participated in covert operations that have resulted in seizures of CDS, currency, weapons, vehicles, and real property. Your affiant has learned various methods employed by people who distribute and use CDS. These methods include, but are not limited to, how CDS is bought and sold, street terminology, the prices for CDS that are distributed at the street level as well as weight quantities, and how CDS are packaged for distribution.

5. Based on this training, experience, and participation in other similar type narcotic trafficking and/or money laundering investigations, your Affiant knows that individuals who are involved in illegal controlled substances activities share various combinations of common characteristics which are listed as follows:

6. **Keeping of controlled substances and paraphernalia.** Persons involved in the illegal distribution of CDS keep such controlled substances, as well as paraphernalia (to include packaging materials, scales etc.) in their residences and/or curtilage, their automobiles, residences of family members, friends and associates, as well as their business locations, storage areas, and/or in the places of operation of their drug distribution activities, such as stash houses or safe houses.

7. **Keeping of documents and records.** Persons involved in the illegal distribution of CDS frequently keep and maintain records of their various activities. Such records frequently are kept to keep track of money owed to them by other drug traffickers and money that they owe to drug suppliers, and to maintain contact information for other drug traffickers and suppliers. Experience in similar cases has established that such records are frequently concealed in a suspect's automobile, residence, office, safety deposit box and on his person, and that they take various forms. Documents commonly concealed by traffickers, include but are not limited to

notes in code, deposit slips, wired money transactions, savings pass books, hidden bank accounts, various forms of commercial paper, personal address books, notebooks, records, receipts, ledgers, travel receipts (rental receipts, airline tickets, bus tickets, and/or train tickets) both commercial and private, money orders and other papers relating to the ordering, transportation, sale and distribution of controlled dangerous substances or other such documents which will contain identifying data on the co-conspirators. The aforementioned items are kept in locations that are considered safe by the drug traffickers and where they have ready access to them, such as safety deposit boxes, their residences, in their vehicles and on their person.

8. **Use of computers.** Persons involved in the illicit distribution of CDS, due to advancement in technology, may be utilizing computers or other electronic storage media to store the records listed above.

9. **Storage of currency.** Drug traffickers must maintain on hand large amounts of United States currency in order to maintain and to finance their ongoing narcotics business. Based on training and experience I know that persons involved in large scale drug trafficking conceal in their residences currency, financial instruments, and evidence of financial transactions relating to narcotics trafficking activities.

10. **Cellular telephones and Related Documents and Equipment.** Persons involved in the illicit distribution of CDS frequently utilize cellular telephones, pagers and other electronic communications devices to facilitate illegal drug transactions. In wiretap investigations such as this, cellular telephones are direct evidence of the criminal conspiracy. A suspect's possession of a cellular telephone with a certain call number (or electronic serial number) identified during the investigation is evidence that that suspect is the user of the cellular telephone and constitutes evidence of the suspect's participation in the conspiracy. Likewise,

documents referencing the possession or use of cell phones, such as bills, cell phone boxes, receipts for phones or payment, etc., are of evidential value insofar as their evidence of a suspect's possession of a particular phone. Moreover, the electronically stored information on these devices is of evidentiary value in identifying other members of the drug trafficking conspiracy and establishing the relationship between these individuals.

11. **Photographs of co-conspirators.** Persons involved in the illicit distribution of CDS frequently take or cause to be taken photographs of themselves, their associates, their proceeds, and their narcotics. Narcotics traffickers commonly have such photographs in their residences, vehicles, electronic devices, or on their person. In a criminal conspiracy case such as this, photographs of co-conspirators with one another is evidence of their association with one another and thus can be used as evidence of their participation in a common conspiracy.

12. **Firearms.** I know, based on training and experience, that drug traffickers commonly have in their possession -- that is, on their persons and in their residences -- firearms and other weapons, which are used by the traffickers to protect and secure their narcotics and proceeds from loss to law enforcement agents or to other criminals who may attempt to steal money and drugs.

## II. CASE BACKGROUND

13. In July 2013, ATF and BPD began investigating Damien RILEY and his role in CDS trafficking in the area of Reisterstown Road and West Cold Spring Lane, Baltimore City, Maryland. Based on the evidence gathered to date, there is probable cause to believe that the described target subject and location contain evidence, fruits, instrumentalities, and/or evidence of possession with the intent to distribute narcotics (CDS) in violation of Title 21, United States Code (USC), Section 841(a)(1). Because this affidavit is being submitted for the limited purpose

of probable cause, it is not intended to include each and every fact known to your affiant or to the government. Your affiant has set forth only those facts necessary to support probable cause and conversely has not excluded any facts known to him which would defeat such a determination.

### III. TARGET SUBJECT

14. **Damien RILEY** is believed to be a CDS trafficker primarily located and operating in the area of Reisterstown Road and West Cold Spring Lane, Baltimore, Maryland. RILEY has two (2) prior convictions for drug trafficking, one (1) conviction for armed robbery and one (1) federal conviction for possession of a firearm by a felon.

### IV. LOCATIONS TO BE SEARCHED

15. This affidavit is submitted in support of an application to search the person of the "TARGET SUBJECT" Damien RILEY and the following location (hereinafter "SUBJECT PREMISES"):

**Subject Premises: 2912 West Cold Spring Lane, Apartment C, Baltimore, Maryland 21215** is RILEY's primary residence. This residence is located in an apartment complex. The main building is a multi story red brick dwelling with a red main entry door. Above the main front door appear the numbers "2912" in black. The door to apartment C is on the second floor, is white in color and displays a "C" in black over a gold door knocker. Records obtained Constellation Energy indicates that Curtis Burke is the subscriber for the location.

16. The SUBJECT PREMISES is utilized by Damien RILEY relating to the distribution of cocaine, a Schedule II, Controlled Dangerous Substance (CDS), and heroin, a Schedule I, Controlled Dangerous Substance (CDS), in the area of Baltimore City, Maryland. The aforementioned location directly relates to an investigation into RILEY, which investigation is being conducted by the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) and the

Baltimore City Police Department (BPD).

## V. PROBABLE CAUSE

17. Based upon an investigation by Officers of the BPD and Special Agents of the ATF, it has been determined that RILEY is currently engaging in trafficking quantities of cocaine and heroin in the Baltimore City, Maryland area. Your affiant believes that RILEY has used the SUBJECT PREMISES to store CDS as well as to store the narcotics-related proceeds and instrumentalities to include, but not limited to, documents, U.S. currency, cell phones, computers, packaging materials, concealable containers, firearms, ammunition and other items indicative of trafficking narcotics.

**Confidential Informant # 1**

18. In July 2013, investigators interviewed a registered confidential informant (hereinafter CI#1) in reference to RILEY. CI#1 knows RILEY and is familiar with drug trafficking in the area of the intersection of Reisterstown Road and West Cold Spring Lane Baltimore, Maryland. CI#1 has provided reliable criminal intelligence in the past which has been corroborated and acted upon by law enforcement personnel, resulting in the issuance of search and seizure warrants and arrests for narcotics violations. Information given to your affiant by CI#1 in this investigation has been corroborated by other investigators and found to be reliable. CI#1 has criminal arrests and is being financially compensated for his/her information.

19. CI#1 informed investigators that RILEY trafficks CDS in the area of Reisterstown Road and West Cold Spring Lane in Baltimore City, Maryland. CI#1 gave investigators RILEY's cellular phone number, **443-801-2137**. CI#1 stated that she/he would be able to purchase raw heroin from RILEY and that she/he has done so in the past. CI#1 stated that she/he believes RILEY currently has access to a firearm. Through conversations with RILEY, CI#1

knows that RILEY has a federal conviction and believes that he is currently under federal supervision from this conviction (investigators have learned that while RILEY does have a federal conviction, he does not appear to be under federal supervision at this time).

**Confidential Informant # 2**

20. During the month of October, 2013, investigators interviewed a registered confidential informant (hereinafter CI#2) in reference to RILEY. CI#2 knows RILEY and is familiar with drug trafficking in the area of the Reisterstown Road and West Cold Spring Lane intersection. CI#2 has provided reliable criminal intelligence in the past which has been corroborated and acted upon by law enforcement personnel, resulting in the issuance of search and seizure warrants and arrests for narcotics violations. Information given to your affiant by CI#2 in this investigation has been corroborated by other investigators and found to be reliable. CI#2 has criminal arrests and is being financially compensated for his information.

21. CI#2 informed investigators that RILEY actively sells cocaine and heroin in the Reisterstown Road and West Cold Spring Lane area. CI#2 stated that she/he knows that RILEY lives in an apartment at 2912 West Cold Spring Lane with his father, Curtis Burke.

**Undercover Purchase # 1**

22. On August 12, 2013, at approximately 9:30 PM, ATF Task Force Officer (TFO) Christopher Faller working in an undercover capacity contacted RILEY via text message on cellular phone number **443-801-2137** and inquired as to the possibility of meeting up the following day. At approximately 9:31 PM, RILEY replied affirmatively. After receiving this response, TFO Faller sent an approximate time to meet, to which RILEY acknowledged affirmatively.

23. On August 13, 2013, at approximately 11:40 AM, TFO Faller texted RILEY stating that he would be in the area shortly. At approximately 11:42 AM, RILEY responded inquiring as to "how many tickets for the party u want so I'll have them ready." TFO Faller responded, "How much u selling them 4." At approximately 11:44 AM, RILEY responded, "Whatr u spending" and TFO Faller replied "4".

24. At approximately 11:48 AM, after the series of texts described above, RILEY called TFO Faller and a meeting location was firmly established at the Citgo Gas Station, located at the corner of Wabash Avenue and West Cold Spring Lane, Baltimore City, Maryland.

25. At approximately 11:52 AM, agents assigned to surveillance observed RILEY exit 2912 West Cold Spring Lane (this location is approximately ¼ mile from the transaction site). RILEY was observed wearing a grey t-shirt with a "Transformers" emblem and blue jeans. RILEY proceeded to walk west on West Cold Spring Lane towards the meet location and thereafter, went out of the view of observing agents.

26. At approximately 12:03 PM, TFO Faller arrived at the Citgo Gas station, as directed by RILEY. RILEY then called TFO Faller using cellular number **443-801-2137** and directed TFO Faller to a specific location on the Citgo parking lot. Following this call, TFO Faller positioned himself according to RILEY's instructions.

27. At approximately 12:06 PM, agents providing security and surveillance during the transaction observed RILEY walking north on Dolfield Avenue, approaching the intersection with West Cold Spring Lane. RILEY was observed wearing a grey t-shirt with a "Transformers" emblem and blue jeans, as previously described. RILEY was then observed to proceed to the Citgo gas station and TFO Faller.

28. At approximately 12:08 PM, RILEY approached TFO Faller's vehicle and entered the front passenger seat. After a brief verbal exchange, RILEY exited the vehicle. At approximately 12:10 PM, RILEY contacted TFO Faller using cellular phone number **443-801-2137** and spoke with TFO Faller, sounding confused as to their prior dealings. At approximately 12:12 PM, RILEY again approached TFO Faller's vehicle and entered the front passenger seat.

29. At approximately 12:13 PM, after a brief verbal exchange, RILEY provided a quantity of suspected heroin to TFO Faller in exchange for $400.00 in documented ATF funds.

30. Following the transaction, RILEY engaged TFO Faller in conversation about future dealings. RILEY inquired as to whether TFO Faller's operation was "lucrative" and stated that he could get him "access to pretty much anything." RILEY further engaged in conversation about cocaine base and offered to give TFO Faller "a piece" to take up and "move from there." RILEY also stated that he could give "more bulk" at a "better price," which would mean "more grams." RILEY then agreed that TFO Faller could call him directly in the future for further dealings.

31. At approximately 12:15 PM, RILEY exited TFO Faller's vehicle and the transaction was concluded. RILEY proceeded east on West Cold Spring Lane, towards Reisterstown Road.

32. Following the transaction, TFO Faller met with S/A Kerwin. S/A Kerwin field tested the suspected heroin and the substance tested positive. TFO Faller then prepared the quantity of heroin for submission to Baltimore City Police Department's (BPD) Evidence Control Unit (ECU) and submitted the items under Central Complaint No. (CC#) 131H06222.

**Undercover Purchase # 2**

33. On September 4, 2013, at approximately 9:46 AM, TFO Faller made contact with Damien RILEY via text message over cellular phone number **443-801-2137** and asked if RILEY would be available for a CDS purchase. RILEY replied affirmatively. TFO Faller replied that he would contact him later in the day for a purchase and RILEY asked for an approximate time. TFO Faller replied he would be in the area at approximately 1:30 PM, RILEY then replied that he would be available any time after 2:00 PM

34. At approximately 1:46 PM, RILEY contacted TFO Faller via text on cellular phone number **443-801-2137** and stated that he was in the area. TFO Faller replied that he was 15 minutes away. RILEY asked "how many tickets u want for the party" and TFO Faller asked for 4 grams and some cocaine for $600.

35. At approximately 2:00 PM, agents observed RILEY in the 4400 block of Park Heights Avenue. RILEY was observed to be wearing a black and grey Polo shirt.

36. At approximately 2:27 PM, agents observed RILEY walking on West Cold Spring Lane towards Reisterstown Road.

37. At approximately 2:30 PM, TFO Faller texted RILEY and stated that he was at the location. At the same time, agents observed RILEY at the McDonald's at the intersection of West Cold Spring Lane and Reisterstown Road.

38. At approximately 2:40 PM, agents observed RILEY leave the McDonald's and walk westbound on West Cold Spring Lane.

39. At approximately 2:42 PM, TFO Faller called RILEY over cellular number **443-801-2137** and asked his location. RILEY replied that he had to return to his house to get something for TFO Faller.

40. At approximately 2:43 PM, agents observed RILEY walking in the 2900 block of West Cold Spring Lane and then enter the outside door of 2912 West Cold Spring Lane using keys in his possession (Investigators know RILEY to use apartment "C" as his residence).

41. At approximately 2:50 PM, RILEY exited 2912 West Cold Spring Lane and entered an awaiting vehicle.

42. At approximately 2:52 PM, that vehicle and RILEY were observed crossing Wabash Avenue and entering the Citgo parking lot at the intersection with West Cold Spring Lane. RILEY exited the passenger side of the same aforementioned vehicle and approached TFO Faller and his U/C vehicle.

43. At approximately 2:52 PM, RILEY entered the U/C vehicle and sat in the front passenger seat. After a brief verbal exchange, RILEY gave TFO Faller suspected heroin and suspected cocaine in return for $600.00 in documented ATF funds. During the conversation, RILEY stated that he has access to "everything under the sun."

44. At approximately 2:54 PM, RILEY exited TFO Faller's vehicle and the transaction was concluded. RILEY re-entered the front passenger seat of the awaiting vehicle and proceeded East on West Cold Spring Lane, towards Reisterstown Road. Surveillance was terminated at this point.

45. Following the transaction, the heroin and cocaine were submitted to BPD's ECU. They were submitted under Central Complaint No. 131I01742. The suspected heroin weighed approximately 4.4 grams. The suspected cocaine weighed approximately 1.7 grams. S/A Kerwin field tested the suspected heroin and cocaine and each substance tested positive.

**Criminal History**

46. During the month of July, 2013, S/A Kerwin checked CJIS/NCIC as to Damien RILEY's criminal history. The check revealed that RILEY has the following convictions:

- Robbery, dated 01/11/1999; Circuit Court for Baltimore City, Maryland; sentenced to 5 years incarceration; Handgun on Person, dated 01/11/1999; Circuit Court for Baltimore City, Maryland; sentenced to 3 years incarceration;

- Felon In Possession of Handgun, dated 04/29/2003; United States District Court for the District of Maryland, sentenced to 30 months incarceration and 3 years supervised release;

- CDS-Manufacture, dated 07/07/2003; Circuit Court for Baltimore City, Maryland; sentenced to 2 years, 6 months incarceration;

- CDS-Poss w/ Int Manf/Distr/Dis, dated 01/19/2006; Circuit Court for Baltimore City, Maryland; sentenced to 3 years incarceration and 2 years probation;

**Nexus of Subject Premises: 2912 West Cold Spring Lane, Apartment "C", Baltimore, Maryland, 21215**

47. CI#2 reported that the **Subject Premises** is RILEY's primary residence, along with his father, Curtis Burke. On September 11, 2013, Constellation Energy replied to a law enforcement request that the subscriber to 2912 W. Cold Spring Lane, Apartment "C," was Curtis Burke. Surveillance during two undercover purchases indicated that RILEY travelled to or from the **Subject Premises** immediately before or after engaging in CDS transactions. Furthermore, law enforcement resource databases (Accurint and Motor Vehicle Administration) list RILEY's address as 2909 or 2903 Ridgewood Avenue, Baltimore, Maryland 21215, however; your affiant and TFO Geare have been working in this specific area for over a year and have never seen RILEY on Ridgewood Avenue. This is significant because your affiant knows

through training and experience that CDS traffickers take measures to avoid police detection by not updating their address with creditors/government and having no direct links to their actual residence.

48. Additionally, on October 16, 2013, TFO Paul T. Geare conducted surveillance on 2912 West Cold Spring Lane, specifically monitoring traffic to each apartment. TFO Geare could plainly see the stairwells leading to the second and third floors through a large window in the stairwell. At approximately 1:20 p.m., TFO Geare observed RILEY enter the main door of 2912 West Cold Spring Lane and proceed to an apartment on the second floor. RILEY went to the left side and disappeared, presumably entering the left side apartment due to not being observed continuing to the third floor. At this time, RILEY was wearing a grey long sleeve t-shirt and blue jeans. At approximately 2:28 p.m., TFO Geare observed RILEY presumably exit the apartment on the second floor, left side, and let an unknown female enter the main door of 2912 West Cold Spring Lane. RILEY was then observed to again presumably enter the second floor apartment, left side, with the female. At this time RILEY was observed to be wearing only shorts and no shirt (the changing of clothes is believed to be a significant measure of rights to the premises). The apartment on the second floor, left side, was later observed to be apartment "C" corroborating CI#2's assertions.

## VI. CONCLUSION

49. Based upon the criminal intelligence of multiple Confidential Informants', the independent observations of law enforcement officers affiliated this investigation, RILEY's criminal history of repeated CDS convictions, multiple undercover CDS purchases and your affiant's training and experience, your affiant believes that RILEY has used the subject premises to secure, transport and/or distribute quantities of CDS in the Baltimore, Maryland area. Your

affiant believes that the aforementioned location contains evidence, fruits, instrumentalities, and/or evidence of possession with the intent to distribute narcotics (CDS) in violation of Title 21, United States Code, Section 841(a)(1).

50.  Your Affiant has signed this document under oath and further states that its contents are true and correct to the best of his knowledge. You affiant is familiar with all aspects of this investigation and all information detailed herein is based upon your affiant's personal knowledge, as well as information communicated to them by others during the course of this investigation.

WHEREFORE, I make this Affidavit in support of my request in the issuance of a search warrant authorizing the search and seizure, at your Affiant's discretion, of all items described in the Attachment A, incorporated herein and attached to the proposed search warrant

So sworn,

Special Agent Daniel M. Kerwin
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to and subscribed before me this 23rd day of October, 2013.

Stephanie A. Gallagher
United States Magistrate Judge

## ATTACHMENT A

A.  Books, records, receipts, notes, ledgers and other papers relating to the transportation, ordering, purchasing and distribution of heroin, a Schedule I Controlled Dangerous Substance.

B.  Books, records, receipts, bank statements and records, letters of credit, money orders and cashier's checks, safe deposit keys, and other items evidencing the obtaining, secreting, transfer, concealment and/or the expenditure of money.

C.  Address and/or telephone books, any papers reflecting names, addresses, telephone numbers or pager numbers indicating relationships with any co-conspirators.

D.  United States currency, precious metals, jewelry and financial instruments.

E.  Photographs, in particular, photographs of co-conspirators, of assets, firearms and/or CDS.

F.  Indicia of occupancy, residency, and ownership of the premises described in said affidavit, including, but not limited to, utility and telephone bills, canceled envelopes, and keys.

G.  Cellular phones

All of the above contain evidence, fruits, instrumentalities, and/or evidence of possession with the intent to distribute narcotics (CDS) in violation of Title 21, United States Code, Section 841(a)(1).

**13-2519SAG**

**ATTACHMENT B**

APARTMENT DESCRIPTION:

2912 W. Cold Spring Lance, Apt. C, Baltimore, Maryland 21215 which is a multi-story red brick dwelling with a red main entry door. Above the main front door appear the numbers "2912" in black. The door to apartment C is on the second floor, is white in color and displays "C" in black over a gold door knocker.